**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON**

So. *United States Court*
*Southern District of Texas*

**JAN 2 5 2012**

David J. Bradley, Clerk of Court

COMPUTATIONAL CRAWLING, LP
a Texas Limited Partnership,

   Plaintiff,

v.

             CIVIL ACTION NO. _____

YELP! INC.,
a Delaware Corporation

   Defendant.

_____/

**H 12 - 247**

## COMPLAINT FOR DECLARATORY JUDGMENT

  Plaintiff, Computational Crawling, LP, a Texas limited partnership (hereinafter "Computational Crawling") as and for its complaint against Defendant (hereinafter "Yelp!") alleges as follows:

### Introduction

  1. This is an action seeking a declaratory judgment under state and federal laws with respect to Computational Crawling's legal and fair access to and distribution of public information obtained from, among other sources, defendant Yelp!. Yelp! has made baseless allegations of unlawful and unauthorized access by Computational Crawling, and is now threatening litigation against, as well attempting to extort money from, Computational Crawling. This is nothing new for Yelp!. Further, a string of email communications belies Yelp!'s disingenuous attempts to gain private and protected personal information from customers of Computational Crawling. This is also nothing new for Yelp!.

### Parties

  2. Computational Crawling, among other activities, conducted "web crawls" via a trademarked crawler named "80legs." The company as a whole employed six individuals.

  3. Upon information and belief, Yelp! Inc. is a multi-million dollar Delaware corporation with hundreds of investors and employees that, among other activities, collates publicly available listings for businesses throughout the United States and Canada. Listings vary by locality, but typically listings include storefronts such as restaurants and shops; service businesses such as doctors, hotels, and cultural venues; and non-business locations such as schools, museums,

parks, and churches. Yelp! has multiple offices in North America, but is headquartered at 706 Mission Street, San Francisco, CA 94103. Yelp!'s Delaware registered agent is National Registered Agents, Inc., 1600 Greentree Drive, Suite 101, Dover, Delaware, 19904.

## Jurisdiction and Venue

4. This Court has jurisdiction over this matter under 28 U.S.C. 1332 as there is complete diversity of the parties and the amount in controversy is greater than $75,000. Moreover, the Court has jurisdiction as this is an action for a declaratory judgment action under 28 U.S.C. 2201 and 2202.

5. This Court has personal jurisdiction over Yelp! because, among other things, Yelp! holds itself out as a "service" to millions of internet users in Texas and thousands of customers in the geographical jurisdiction of the Court when such users conduct routine information searches from search engines, e.g. Google. Computational Crawling, through its trademarked 80legs web crawler, was formed, registered and conducts business in the State of Texas and City of Houston.

6. Venue is proper in this District under 28 U.S.C. 1391 because defendant Yelp! is subject to the personal jurisdiction of the Court and because a substantial part of the events or omissions giving rise to the claim occurred within this District.

7. This action for declaratory judgment is timely and proper.

8. An actual case or controversy exists between the parties. Yelp!, by and through its communications to Computational Crawling, has threatened litigation against Computational Crawling for alleged unlawful and unauthorized crawling of Yelp! websites. While these allegations by Yelp! are false, the accusations and threats in the communications nevertheless threaten injury to Computational Crawling. Further, Yelp!, through counsel, is attempting to strong-arm Computational Crawling into breaching confidentiality and privacy agreements and laws by demanding detailed customer information from Computational Crawling. Finally, Yelp! is attempting to extort money from Computational Crawling in order to "resolve" a dispute that Yelp! itself falsely created. As a result, a declaratory judgment is necessary to validate and protect Computational Crawling's rights and to protect Computational Crawling's customers.

## Factual Background

9. Computational Crawling was headquartered in Houston, Texas and developed various products that utilize a distributed web crawling and data extraction technology. Computational Crawling's first product-to-market was "80legs," a customizable web crawler.

10. In addition to performing customized web crawling for its customers, 80legs sold "crawl packages" from regularly crawled publicly-available sites that contained, for example, recompiled data on company listings, directories, and reviews.

11. On or about October 1, 2009, Computational Crawling began utilizing 80legs to crawl Yelp!'s publicly available web sites. Such crawls are routinely performed on Yelp! sites by other web crawlers e.g. Google, Yahoo, Microsoft, and other anonymous web crawlers.

12. Similar to its behavior with other crawlers, Yelp! failed to use customary and standard methods to block 80legs from crawling its sites. Such customary and standard methods include utilizing "robots.txt" strings to prevent specifically named web crawling "agents" from accessing websites and data. Further, Yelp! did not require 80legs to actively consent to any Terms of Service ("TOS") prior to 80legs automated crawling of Yelp! web pages. Nor did 80legs, an automated crawler, so consent.

13. In July, 2010, Computational Crawling first created "crawl packages" that contained publically available data from Yelp! These packages were purchased by several customers of 80legs.

14. One reason for the creation of such crawl packages was based on customer requests for the large amount of unsolicited "customer" reviews of thousands of businesses on Yelp!. Thus, the 80legs "Yelp!" crawl packages served to efficiently and fairly apprise the public, including businesses, of what was being said about them. This **protects the public's identity** and reputation. This positive use of crawl packages is important as Yelp! itself does not notify businesses about reviews, including inaccurate or negative reviews, because Yelp! has been accused (sued) regarding "extorting" such businesses by demanding payment from businesses in order to protect its identity and reputation by removing inaccurate or defamatory reviews.

15. On November 18, 2011, Yelp!, through Senior Litigation Counsel Aaron Schur, contacted Computational Crawling and demanded that Computational Crawling cease and desist from crawling Yelp!

16. Computational Crawling immediately complied with Mr. Schur's request and stopped crawling Yelp!.

17. After November 18, 2011, Mr. Schur continued to harass Computational Crawling. Mr. Schur demanded, among other things, full disclosure of customer data, despite such disclosure violating the Computational Crawling business model, customer agreement, and possibly state and Federal privacy laws. Mr. Schur made these demands with the promise that any such data *would not* be used in any future litigation against Computational Crawling by Yelp!. (see email communications to and from Mr. Schur, attached as Exhibit "A."). This is not true.

18. Computational Crawling steadfastly refused to disclose customer data, not only because of its business model, customer agreement, and potential violations of privacy laws, but also because Mr. Schur's communications made it clear that such customers would be contacted and potentially threatened and/or harassed by Mr. Schur. This is part of Yelp!'s extortion *modus operandi* -- invading privacy and damaging identity or reputation unless paid not to do so.

19. On January 17, 2012, Aaron Schur demanded "settlement" from Computational Crawling regarding the "80legs.com" matter. Mr. Schur couched this letter in terms of resolving "our"

ongoing dispute, and then alleged in the letter that the dispute was over 80legs.com's supposed "unlawful and unauthorized access, copying, and distribution of content" from Yelp! websites (a copy of this letter is attached herein as "Exhibit B"). These allegations are patently false.

20. In the January 17, 2012 letter, Mr. Schur also demanded one-hundred thousand dollars ($100,000.00) from Computational Crawling (see Exhibit B).

21. Mr. Schur concluded his January 17, 2012 letter by stating that his proposal, including a six figure payout to Yelp!, "is intended to **avoid further disputes or litigation**."

22. Mr. Schur attempted to cloak his letter demanding money and threatening litigation by stating that the letter was "for settlement purposes only" as per Federal Rule of Evidence 408. However, Rule 408 is inapplicable to Mr. Schur's letter and its demands, which are in no way linked to any valid legal claims or part of any negotiation or settlement between *parties* to a lawsuit. Moreover, while the value of the monetary extortion is important in this letter, the letter also contains an explicit threat of litigation should Computational Crawling fail to pay off Yelp!.

23. Far from any real "resolution" or negotiation regarding this "dispute," Mr. Schur simply demanded that Computational Crawling pay $100,000.00 to Yelp! despite the fact that the 80legs crawls and crawl packages were (1) performed no differently than via other web crawling companies, (2) completed because Yelp! did not utilize the full extent of industry standard or customary methodology to prevent such crawling, (3) withdrawn immediately on notice from Yelp! that, unlike others, 80legs must stop crawling Yelp!.   In short, Mr. Schur demanded $100,000.00 from a small start-up company that did nothing wrong.

24. 80legs' crawling and packaging of Yelp! data did not violate any statutory or common law, and in fact it was Yelp! that first requested that 80legs potentially violate state and Federal privacy laws regarding 80legs customer identity and data.

25. The intent of Mr. Schur's January 17, 2012 letter was to inappropriately extort money from Computational Crawling and threaten litigation.   Indeed, Mr. Schur has threatened litigation even before this letter (see Exhibit A).

### Request for Declaratory Judgment in Favor of Computational Crawling

26. Computational Crawling incorporates the foregoing paragraphs 1-25 as if fully set forth verbatim herein.

27. Yelp! has asserted, and Computational Crawling denies, that Computational Crawling's use of the 80legs web crawler on Yelp! sites violated certain laws.  There is no argument or evidence that any laws, state or Federal, were so violated.

28. Yelp!'s assertions regarding "unlawful and unauthorized" acts by Computational Crawling create a reasonable apprehension by Computational Crawling that Yelp! will file a lawsuit or initiate other legal proceedings against Computational Crawling asserting claims based (however inappropriately) in both state and Federal law.

29. The emails and January 17, 2012 letter prepared by or on behalf of Yelp! by Aaron Schur and sent to Computational Crawling create an actual controversy regarding the rights and remedies available to Computational Crawling in defending against the malicious and unfounded claims of Yelp!  The January 17, 2010 letter **explicitly threatens litigation** should Computational Crawling not pay Yelp! $100,000.00.  While this may be pocket change to a multi-million dollar company such as Yelp!, this amount is unconscionable and untenable (especially given the baseless accusations behind the demand) to a small start-up like Computational Crawling.

30. Yelp!'s assertions of wrongdoing adversely affected Computational Crawling and will continue to adversely affect 80legs until this Court makes a determination of Computational Crawling's and 80leg's absolute right to gather and collate publicly available data without fear of unfounded but serious monetary and legal repercussions.  Start-up companies like Computational Crawling have little to no profitability.  Such start-ups struggle just to pay every day operating expenses.  Start-ups such as Computational Crawling are destroyed via actions such as any payment of Yelp!'s inappropriate extortion demand (let alone $100,000) or unfounded lawsuit filed by Yelp!

<u>**Prayer for Relief**</u>

Wherefore, Computational Crawling respectfully requests that this Court enter a declaratory judgment against Yelp! as follows:

1.  That the Court enter a judgment declaring that Computational Crawling did not violate any of Yelp!'s rights, or any state or federal law or common law regarding unlawful and unauthorized access, copying, and distribution of content from Yelp! websites;

2.  That Yelp! be ordered to pay Computational Crawling's attorneys' fees, costs, and other expenses incurred as a result of the controversy that Yelp! created by their communications and threats to Computational Crawling;

3.  That this Court grant such further and other relief as the Court deems just and proper.

Dated this _25_ day of January, 2012

Computational Crawling, LP

By:

Shion Deysarkar, CEO
Computational Crawling, LP
Pro Se Plaintiff

# EXHIBIT "A"

---------- Forwarded message ----------
From: **Aaron Schur** <aschur@yelp.com>
Date: Fri, Nov 18, 2011 at 7:57 PM
Subject: Yelp and 80legs.com
To: info@compucrawl.com

To Whom It May Concern:

Please see attached.

Regards,

Aaron Schur

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

**http://www.yelp.com/**

*This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

---

**Shion Deysarkar <shion@80legs.com>**                    **Sun, Nov 20, 2011 at 9:57 AM**
To: aschur@yelp.com

Aaron,

Thanks for your notification. Effective immediately, we will remove Yelp-related crawl packages. But I would ask you to consider in the future permitting us to crawl Yelp. Many of our customers are companies like ad networks trying to discover new ad channels, IP protection firms scanning for infringing content and other such use-cases. I would appreciate the opportunity to seek your permission. Meanwhile, we are complying with your request.

Thanks,

Shion Deysarkar

80legs

---

**Aaron Schur <aschur@yelp.com>**                    **Mon, Nov 21, 2011 at 11:21 AM**

To: Shion Deysarkar <shion@80legs.com>

SETTLEMENT COMMUNICATION

Shion,

Thank you for the response, and for your agreement to remove the Yelp-related crawl packages.

Please, however, respond to the other questions posed in my letter of November 18, namely:

A) The number of each of the following "crawl packages" that you have sold: 1) Yelp Crawl, 2) Yelp.co.uk Crawl, and 3) Yelp People Crawl.

B) Whether 80legs offers, or has offered, any other data obtained from a Yelp Site in any form.

C) Information sufficient to identify the recipients of each of those crawl packages identified above.

D) The amount of money you have received from sales of each of those crawl packages identified above.

\*          \*          \*

Regards,

Aaron

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

***http://www.yelp.com/***

*This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

---

**Shion Deysarkar <shion@80legs.com>**                                  **Sun, Nov 27, 2011 at 11:14 PM**
To: Aaron Schur <aschur@yelp.com>

Aaron,

I have been instructed by legal counsel to not disclose any customer information.

Thanks,
Shion

---

**Aaron Schur <aschur@yelp.com>**                    **Mon, Nov 28, 2011 at 11:51 AM**
To: Shion Deysarkar <shion@80legs.com>

Shion,

If 80legs has an attorney, can you please provide me with their contact information?

I note that even if you were not disclosing "customer information", that was only one of my questions.  You could still respond to questions A, B, and D below.  But I am happy to discuss these issues with your attorney if you prefer.

Regards,

Aaron

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

**_http://www.yelp.com/_**

*This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

---

**Shion Deysarkar <shion@80legs.com>**                    **Mon, Nov 28, 2011 at 12:01 PM**
To: Aaron Schur <aschur@yelp.com>

I don't think I'm at liberty to discuss specific financial information either.

- Shion

---

**Shion Deysarkar <shion@80legs.com>**                    **Mon, Nov 28, 2011 at 12:05 PM**
To: Aaron Schur <aschur@yelp.com>

I should also clarify something I said earlier.  We run large scans of the web which cross millions of domains, similar to other search engines and sometimes for search engine-related purposes. I would hope it would be ok for us to crawl Yelp for those purposes, much like how Google or another search engine does.

**Aaron Schur <aschur@yelp.com>**                        **Mon, Nov 28, 2011 at 12:18 PM**
To: Shion Deysarkar <shion@80legs.com>

Shion,

80legs is not permitted to access Yelp's websites for any purpose, as stated in my letter.

Please provide me with the contact information for the attorney for 80legs, if it has one.  I am trying
to resolve this matter with you, but 80legs refusal to provide the most basic information is not
helpful.

Regards,

Aaron

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

*http://www.yelp.com/*

*This communication may contain information that is legally privileged, confidential or exempt from*
*disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or*
*copying of this communication is strictly prohibited. Anyone who receives this message in error*
*should notify the sender immediately by telephone or by return e-mail and delete it from his or her*
*computer.*

---

**Shion Deysarkar <shion@80legs.com>**                   **Mon, Nov 28, 2011 at 12:32 PM**
To: Aaron Schur <aschur@yelp.com>

Aaron, you can reach our attorney, Jack McGehee at jmcgeheer@lawtx.com.

Thanks,
Shion

---

**From:** Aaron Schur [mailto:aschur@yelp.com]
**Sent:** Monday, November 28, 2011 7:20 PM
**To:** jmcgehee@lawtx.com
**Subject:** 80legs

Dear Mr. McGehee,

I am in-house counsel for Yelp! Inc.  I understand that you are counsel to 80legs.com, a website I have
recently corresponded with regarding their unauthorized crawling and copying of Yelp's website, and their
selling of data obtained from Yelp's website.  Do you have time this week to discuss the issues I have
previously raised with 80legs?

Regards,

Aaron Schur

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

*http://www.yelp.com/*

*This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

---

**Jack E. McGehee <jmcgehee@lawtx.com>**                    **Mon, Nov 28, 2011 at 8:41 PM**
To: Aaron Schur <aschur@yelp.com>

Aaron,

I received your email. And yes, I do represent 80legs. I'm on the road taking a few depositions before returning next week to pick a jury. Is Monday ok for us to talk?  How is 1100 am Houston time?  That will give me time to return to Houston and review the file so I'm conversant with the issues.  If you have an earlier deadline, let me know and I'll do my best to talk sooner.

---

**Jack E. McGehee <jmcgehee@lawtx.com>**                    **Tue, Nov 29, 2011 at 9:57 AM**
To: Aaron Schur <aschur@yelp.com>

Hey Aaron,

11:30 works.  Looking forward to our visit.

Jack

**From:** Aaron Schur [mailto:aschur@yelp.com]
**Sent:** Tuesday, November 29, 2011 9:47 AM
**To:** Jack E. McGehee
**Subject:** Re: 80legs

Jack,

Thank you for the response.  Monday will work fine, but can we do 11:30 am Texas time (9:30 am Pacific)?

Regards,
Aaron

**Jack E. McGehee <jmcgehee@lawtx.com>**                    **Sun, Dec 11, 2011 at 8:55 AM**
To: Shion Deysarkar <shion@80legs.com>

Shion, this agreement is ok and may be signed if you desire.  Ensure all signatures and return
email addresses reflect 80legs only.

**From:** Aaron Schur [mailto:aschur@yelp.com]
**Sent:** Friday, December 09, 2011 6:10 PM
**To:** 'Jack E. McGehee'
**Subject:** RE: 80legs

FOR SETTLEMENT PURPOSES ONLY

Jack,

Thank you for speaking with me earlier this week.  As discussed, attached is a draft
confidentiality agreement which should alleviate your client's concerns regarding the
communication of potentially confidential information.  As I noted on our call, we take the
unauthorized access, sale, and dissemination of our data quite seriously, and would like to be
able to identify the recipients of that data from 80legs, as well as determine how much revenue
80legs received from the sale of the Yelp-related crawl packages.  Please contact me with any
edits or questions

Regards,

Aaron

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

**_http://www.yelp.com/_**

*This communication may contain information that is legally privileged, confidential or exempt
from disclosure. If you are not the intended recipient, please note that any dissemination,
distribution, or copying of this communication is strictly prohibited. Anyone who receives this
message in error should notify the sender immediately by telephone or by return e-mail and
delete it from his or her computer.*

---

**Shion Deysarkar <shion@80legs.com>**                    **Mon, Dec 19, 2011 at 1:49 PM**
To: Aaron Schur <aschur@yelp.com>, "Jack E. McGehee" <jmcgehee@lawtx.com>

Aaron,

Here is the NDA you requested be signed.

Thanks,

Shion Deysarkar

---

**Aaron Schur <aschur@yelp.com>**                    **Mon, Dec 19, 2011 at 5:33 PM**
To: Shion Deysarkar <shion@80legs.com>, "Jack E. McGehee" <jmcgehee@lawtx.com>

Thank you Shion,

Countersigned agreement is attached.  I assume that the execution of this agreement satisfies
80legs's concerns regarding confidentiality, and therefore there should not be further
impediments to Yelp receiving identification of the recipients of that data from 80legs, as well as
an accounting of how much revenue 80legs received from the sale of the Yelp-related crawl
packages.  If this my understanding is incorrect, please let me know.

Regards,

Aaron

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

***http://www.yelp.com/***

*This communication may contain information that is legally privileged, confidential or exempt
from disclosure. If you are not the intended recipient, please note that any dissemination,
distribution, or copying of this communication is strictly prohibited. Anyone who receives this
message in error should notify the sender immediately by telephone or by return e-mail and
delete it from his or her computer.*

---

**Shion Deysarkar <shion@80legs.com>**                **Tue, Dec 20, 2011 at 9:05 AM**
To: Aaron Schur <aschur@yelp.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Aaron,

I've been told to provide for you anything we have without divulging private customer information.

I would still like to discuss the possibility of using 80legs to power search capability.

Thanks,
Shion

---

**Aaron Schur <aschur@yelp.com>**                                **Tue, Dec 20, 2011 at 11:31 AM**
To: Shion Deysarkar <shion@80legs.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Thanks Shion, as I have mentioned a few times now, we are most interested in receiving the
names of those who purchased or received Yelp-related crawl packages from 80Legs, as well as
the revenue derived from the sale of such packages.  This is information which Yelp would
speedily obtain in any litigation, which I am trying to avoid by entering into these discussions
with you.  Can you please forward me this information?

Regards,

Aaron

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

**_http://www.yelp.com/_**

*This communication may contain information that is legally privileged, confidential or exempt
from disclosure. If you are not the intended recipient, please note that any dissemination,
distribution, or copying of this communication is strictly prohibited. Anyone who receives this
message in error should notify the sender immediately by telephone or by return e-mail and
delete it from his or her computer.*

---

**Shion Deysarkar <shion@80legs.com>**                           **Wed, Dec 21, 2011 at 11:20 AM**
To: Aaron Schur <aschur@yelp.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Aaron,

I've attached the information I'm able to share.

Thanks,
Shion

---

**Aaron Schur <aschur@yelp.com>**                                **Wed, Dec 21, 2011 at 11:26 AM**
To: Shion Deysarkar <shion@80legs.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Can you please explain to me why you believe you are unable to share the names of those who purchased or received these packages from 80legs?

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

**_http://www.yelp.com/_**

*This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

---

**Shion Deysarkar <shion@80legs.com>**                          **Wed, Dec 21, 2011 at 5:56 PM**
To: Aaron Schur <aschur@yelp.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Aaron,

I want to cooperate by giving you everything you need to make a good decision about how to proceed. That's not only my desire but it's what I was advised to do. Jack basically told me to open our operations to you and give you everything you want. He said not only can we trust you, but the confidentiality give us the protection we may eventually need. He did however caution me not to violate any of our customer's privacy. I think he envisions that before we disclose private customer information we need their permission first. I am hoping that you will determine that our business model is not a threat to yours. In fact, I am hoping that your folks will eventually see a benefit to giving us permission to include Yelp in our crawls. We welcome any suggestion attributing Yelp as the provider of any data derived from your site. Until then, as we promised, we are no longer bundling crawl packages using data from your site.

Please let me know what else I can provide.

Thanks,

Shion

---

**Aaron Schur <aschur@yelp.com>**                          **Thu, Dec 22, 2011 at 12:21 PM**
To: Shion Deysarkar <shion@80legs.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

FOR SETTLEMENT PURPOSES ONLY

Shion,

I respect your stated willingness to cooperate, but I am having difficulty understanding the privacy claims here. I am not aware of any law that limits your ability to inform Yelp of the recipients of the unlawfully created crawl packages, regardless of any permissions. Understanding who has received these crawl packages is pivotal to us. As I have stated repeatedly, any court would readily allow this information to be delivered to Yelp, and I want to be crystal clear that we are prepared to go down that route here if there is a continued lack of cooperation. Note that our Terms of Service, which are binding here, require any court actions to be brought here in San Francisco.

To the extent you have not done so already, I also ask that you contact each of these customers and request that they cease use of any Yelp crawl packages, and delete such data from their systems, providing confirmation of this.

-Aaron

**Aaron Schur**
**Corporate Counsel**
**Yelp! Inc.**

***http://www.yelp.com/***

*This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

---

**Shion Deysarkar <shion@80legs.com>**                          **Sat, Dec 24, 2011 at 1:49 PM**
To: Aaron Schur <aschur@yelp.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Aaron,

I thought and hoped that I provided you everything you needed to show you we were not a threat to your business. We immediately complied with your cease and desist request. You suggested a few times that you will take us to Court. I ask that you not do that. It could surely ruin our small company. We are a group of good folks trying our best to add value to search technology.

We have told you that we won't bundle Yelp data anymore and pledged continued cooperation

if you need more information.  I would hope there is a compromise regarding whether we must divulge our customer's identity.  I'm told I can't do that.   On top of this, we promised our customers in our terms of service that we won't.  And quite honestly, I wouldn't feel right doing it since I would guess you want it so you can contact them.  That too would ruin us.  I feel cornered while trying to do the right thing.

As I said, we want your approval, although I'll admit that sounds a bit remote at this point. What else can we do for you?

- Shion

---

**Aaron Schur <aschur@yelp.com>**                                    **Tue, Jan 3, 2012 at 11:33 AM**
To: Shion Deysarkar <shion@80legs.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Shion,

I am confused by your email.  Are you telling me that you will not contact your customers to request they cease use of Yelp crawl packages and delete our data from their systems?

Regards,

Aaron

**Aaron Schur**
**Senior Litigation Counsel**
**Yelp! Inc.**

**_http://www.yelp.com/_**

*This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

---

**Shion Deysarkar <shion@80legs.com>**                              **Wed, Jan 4, 2012 at 9:47 AM**
To: Aaron Schur <aschur@yelp.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Aaron,

We will immediately contact our customers to request they cease use of Yelp crawl packages and

delete your data from their systems.  Hopefully this is satisfactory to you and resolves our dispute.
Thanks for giving us a chance to work through this problem.

Thanks,

Shion

---

**Aaron Schur <aschur@yelp.com>**                                  **Mon, Jan 9, 2012 at 4:48 PM**
To: Shion Deysarkar <shion@80legs.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Shion,

 Taking into account your previous emails, I am continuing to look for ways for us to resolve this
matter without litigation.  To that end, would it be possible for you to send any contract, or terms of
service, which you believe impedes 80legs's ability to share the names of the recipients of the Yelp
crawl packages?  Also, without disclosing the names of the recipients, can you inform me of what
types of companies we are dealing with:  e.g., ad networks, review websites, directory services, etc.?

 Regards,

 Aaron

**Aaron Schur**
**Senior Litigation Counsel**
**Yelp! Inc.**

*http://www.yelp.com/*

*This communication may contain information that is legally privileged, confidential or exempt from*
*disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or*
*copying of this communication is strictly prohibited. Anyone who receives this message in error*
*should notify the sender immediately by telephone or by return e-mail and delete it from his or her*
*computer.*

---

**Aaron Schur <aschur@yelp.com>**                                  **Wed, Jan 11, 2012 at 11:29 AM**
To: Shion Deysarkar <shion@80legs.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Shion,


Thank you for the response.  How many packages were sold to businesses in each of those

categories you listed?  In other words, can you give me a breakdown?

 Also, again, please forward me the "terms of service" you believe inhibits your ability to share the specific identity of these purchasers with Yelp...you had written on December 24 that 80legs "promised [its] customers in [its] terms of service that [it] won't" share their identity with us.  If there are any other contractual restrictions you believe are at issue, please also send me a copy of them.

Regards,

Aaron

**Aaron Schur**
**Senior Litigation Counsel**
**Yelp! Inc.**

*http://www.yelp.com/*

*This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

Aaron Schur <aschur@yelp.com>                          **Fri, Jan 13, 2012 at 3:18 PM**
To: Shion Deysarkar <shion@80legs.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Shion,

Do you have a response to my questions?

-Aaron

**Aaron Schur**
**Senior Litigation Counsel**
**Yelp! Inc.**

*http://www.yelp.com/*

*This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.*

**Shion Deysarkar <shion@80legs.com>**                    **Fri, Jan 13, 2012 at 4:04 PM**
To: Aaron Schur <aschur@yelp.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

Aaron,

 Since forming the company, we have been instructed by outside counsel to never breach
customer privacy by revealing either their identity or any personal identifying
information about them.  We have told our customers and other parties this several times
during our time in business.

 Here is a breakdown:

- Small business lead generation: 40%
- Small business reputation monitoring services: 13%
- Social media analytics: 47%

I hope this information is satisfactory and we bring this issue to a close.

 Thanks,

 Shion

---

**Aaron Schur <aschur@yelp.com>**                         **Tue, Jan 17, 2012 at 12:21 PM**
To: Shion Deysarkar <shion@80legs.com>
Cc: "Jack E. McGehee" <jmcgehee@lawtx.com>

CONFIDENTIAL SETTLEMENT COMMUNICATION

 Shion,

 Please see attached.

 Regards,

 Aaron

 **Aaron Schur**
 **Senior Litigation Counsel**
 **Yelp! Inc.**

_**http://www.yelp.com/**_

_This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer._

# EXHIBIT "B"



**FOR SETTLEMENT PURPOSES ONLY—FEDERAL RULE OF EVIDENCE 408**

January 17, 2012

**VIA EMAIL & US MAIL:** shion@80legs.com

Shion Deysarkar, Chief Executive Officer
Computational Crawling LP d/b/a 80legs.com
1250 Wood Branch Park Drive, #405
Houston, TX 77079

> **Re: 80legs.com**

Dear Mr. Deysarkar:

I write following my letter to you dated November 18, 2011, and my subsequent conversations and correspondence with you and Mr. Jack McGehee, counsel for 80legs.com, over the past two months. The purpose of this letter is to propose the outline of a resolution to our ongoing dispute related to 80legs.com's unlawful and unauthorized access, copying, and distribution of content from our websites, including without limitation www.yelp.co.uk and www.yelp.com (the "**Yelp Sites**"). I note that although you have conceded that 80legs has sold Yelp's content to approximately thirty customers, you have steadfastly failed to identify any of these recipients to Yelp. Taking all of this into consideration, we propose the following resolution to this dispute:

**First**, 80legs would pay to Yelp, as damages, one-hundred thousand dollars ($100,000.00). Yelp will accept this amount as reimbursement for the amount of money 80legs received from its customers from its unauthorized sales of content from the Yelp Sites, compensation for the harm to Yelp from having its site content distributed to approximately thirty 80legs customers (and potentially re-distribution by these customers to others), and the costs Yelp has incurred in researching 80legs' conduct, as well as identifying and resolving these issues with 80legs.

**Second**, to the extent this has not already occurred, 80legs will contact each customer to whom it sold or otherwise distributed Yelp's data and request that each such customer immediately: 1) cease use of any Yelp-related content which they obtained from 80legs, 2) delete any Yelp-related data from its systems, 3) request that any other individual or entity to whom the customer transferred the Yelp-related data also cease use of the Yelp-related content and delete it from their systems, and 4) obtain confirmation from the customer that they will comply with 80legs' requests.

l



**Third**, after 80legs has made the requests to its customers described above, it will inform Yelp – under penalty of perjury – that it has made these requests and disclose to Yelp the number of any customers who did not, whether through an express refusal or otherwise, provide confirmation that they would comply with 80legs' requests.

Yelp's above proposal is intended to avoid further disputes or litigation on these matters, and Yelp would be willing to execute a written settlement agreement with appropriate releases between Yelp and 80legs, if this proposal is accepted by 80legs.

This offer will remain open until 5:00 p.m. Pacific Time, on January 27, 2012.

Regards,

Aaron Schur
Senior Litigation Counsel
Yelp! Inc.
706 Mission Street, 7th Floor
San Francisco, California 94103

2